AO 91 (Rev. 08/09) Criminal Complaint

REDACTED

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| United States of America | ) |
|---|---|
| v. | ) |
| Jorge ROJO-Villa, | ) Case No. H16-261 M |
| Maria VILLA, Pedro ROJO, | ) |
| Juan CANTARERO, | ) |
| | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 11, 2013__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 841(a)(1) | did knowingly and intentionally possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; |
| 21 USC Section 846 | did knowingly conspire to intentionally possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of mehtamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:
See the affidavit (Attachment A) in support of a Criminal Complaint.

☑ Continued on the attached sheet.

_Complainant's signature_

Michael Campise, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __02/19/2016__

_Judge's signature_

City and state: __Houston, Texas__

John R. Froeschner, Magistrate Judge
_Printed name and title_

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, Clerk of Court
By Kathleen Murphy
_Deputy Clerk_

Affidavit

I, Michael Campise, your affiant, being duly sworn, depose and state the following:

I am a Special Agent assigned to Homeland Security Investigations (HSI), Houston, TX. I have been employed as a federal law enforcement officer since September 2009. I have knowledge and experience in various types of investigations to include narcotics, money laundering and bulk cash smuggling investigations.

The information enumerated in the paragraphs below, furnished in support of this affidavit, is derived from my own observations, and that of other law enforcement officers.

On May 27, 2014, a buy/walk operation was conducted using two (2) documented HSI confidential informants (CI #1 and CI #2) at the residence located at 5839 Southgood Street, Houston, TX. Approximately 466.1 grams (gross weight) of crystal methamphetamine was purchased from an individual identified to be Jorge ROJO-Villa for the pre-negotiated price of $7,500. On approximately May 24-25, 2014, CI #1 had a conversation with Jorge ROJO-Villa on the phone. HSI special agents attempted to record this phone call; however, a technical issued prevented the phone call from being recorded. During this phone call, CI #1 asked about prices for crystal methamphetamine and told Jorge ROJO-Villa that wanted to purchase a pound of crystal methamphetamine. Jorge ROJO-Villa said that it would be $7,500. On May 27, 2014, CI #1 and CI #2 arrived at the residence located at 5839 Southgood Street, Houston, TX, at approximately 8:13pm. A Hispanic male answered the door and let both CI #1 and CI #2 inside and they sat down in the living room. After brief introductions and greetings, Jorge ROJO-Villa stated that he had to call his "connect" and went into another room of the house. CI #1 reported that Jorge ROJO-Villa could be heard but he was speaking very fast and in English so CI #1 could not understand what Jorge ROJO-Villa was saying. Once Jorge ROJO-Villa completed the phone call he returned to the living room. CI #1 then handed Jorge ROJO-Villa the pre-arranged amount of $7,500 and Jorge ROJO-Villa counted it. CI #1 also asked Jorge ROJO-Villa if he sold anything else and Jorge ROJO-Villa answered that he sold cocaine and that he sells more cocaine than crystal methamphetamine. During the post-op debrief, CI #1 said that after approximately 30 minutes, Jorge ROJO-Villa received a phone call and then immediately got up and went outside. According to CI #1, Jorge ROJO-Villa returned a short time later with a large Tupperware-type container containing a large quantity of crystalline substance. CI #1 said that Jorge ROJO-Villa opened the container so that CI #1 could see and smell the contents. In the estimation of CI #1, the container had seven to eight pounds of crystal methamphetamine in it. Jorge ROJO-Villa then left the living room area for a short time and returned with a smaller Tupperware-type container holding a smaller amount of crystal methamphetamine. Jorge ROJO-Villa then poured that smaller amount of crystal methamphetamine into a large ziplock bag and sealed it. Jorge ROJO-Villa then placed the ziplock bag containing the crystal methamphetamine into a tan, plastic grocery bag. CI #1 and CI #2 departed a short time later and drove directly to a pre-arranged meeting location. HSI special agents then seized the tan, plastic bag that contained the ziplock

bag that held the crystal methamphetamine. Both CI #1 and CI #2 identified a photo of Jorge ROJO-Villa from a photo lineup as the individual from who CI #1 purchased the crystal methamphetamine. The crystal methamphetamine was taken to the U.S. Customs and Border Protection lab for testing and approximately 443.7 grams (net weight) was received. A sample was taken from that and lab analysis determined that it was methamphetamine hydrochloride with a 97.8% average purity. The residence located at 5839 Southgood Street, Houston, TX, is approximately 888 feet to the Center of Kelso Elementary School, 540 feet to the southeast corner of the real property on which Kelso Elementary School sits, and 765 feet to the southwest corner of the real property on which Kelso Elementary School sits. There is a school playground located near the southwest corner of the schools real property. Also present at 5839 Southgood Street, Houston, TX, during this buy/walk operation was Maria VILLA, ▬▬▬▬▬ Eric SHORT, and CI #2. CI #1 and CI #2 are documented with HSI and have provided information on multiple narcotics cases which have resulted in the seizure of narcotics and convictions. CI #2 has provided information on multiple Houston-based narcotics cases which have been independently corroborated through other investigative efforts. As such, it has been deemed that the information provided by CI #1 and CI #2 is accurate and reliable.

On July 30, 2014, in a recorded conversation, CI #1 speaks to Jorge ROJO-Villa on the phone and they discussed a narcotics transaction for half of the previous amount purchased (referring to the approximate one pound crystal methamphetamine purchase on May 27, 2014). During that conversation, arrangements were made for the narcotics transaction to take place the following day, July 31, 2014.

On July 31, 2014, a buy/walk operation was conducted using CI #1 and resulted in the seizure of approximately 238 (gross weight) grams of crystal methamphetamine. HSI sent CI #1 to the residence located at 5839 Southgood Street, Houston, TX, after being unable to reach Jorge ROJO-Villa on the telephone. When CI #1 arrived, a female child, approximately 9-10 years old opened the door and then called for someone else. Maria VILLA came to the door and invited CI #1 inside. Once inside, Maria VILLA led CI #1 to the kitchen where ▬▬▬▬▬ was seated at the table, eating. After a short casual conversation, Maria VILLA asked CI #1 what he/she needed. CI #1 stated that he/she wanted ½ of what he/she purchased last time and explained that he/she tried to call Jorge ROJO-Villa but that the phone was not working. Maria VILLA then tried to call Jorge ROJO-Villa on the phone but was unable to reach him. Maria VILLA then told ▬▬▬▬▬ to help CI #1 get what he/she needed. ▬▬▬▬▬ then calls an unknown individual and tells them to bring some because his ▬▬▬▬▬ customer already has the paper. ▬▬▬▬▬ then hangs up and makes a joke to CI #1 about how easy it is to order product and that it is just like ordering pizza. After approximately thirty minutes, a Hispanic male with a tattoo on his neck (CS #1 identified a picture of ▬▬▬▬▬), arrived and brought ▬▬▬▬▬ a Tupperware-type container containing 2-3 pounds of crystal methamphetamine, in the estimation of CI #1. CI #1 then handed ▬▬▬▬▬ $3,750 who then handed the money over to another Hispanic male (identified as Joaquin ROJO by CS #1), who verified the count and gave the money back to ▬▬▬▬▬ While Joaquin ROJO was verifying the amount of

money, ▓▓▓▓▓ weighed out approximately ½ pound of crystal methamphetamine and put it in a large ziplock bag which ▓▓▓▓▓ then placed inside of a small, black plastic bag. ▓▓▓▓▓ then gave the bag to CI #1. After a short time CI #1 departed the residence and drove directly to a pre-arranged meeting location. HSI special agents then seized the black, plastic bag that contained the ziplock bag that held the crystal methamphetamine. CI #1 identified a photo of ▓▓▓▓▓ from a photo lineup as the individual from who CI #1 purchased the crystal methamphetamine. The crystal methamphetamine was taken to the U.S. Customs and Border Protection lab for testing and approximately 222.0 grams (net weight) was received. A sample was taken from that and lab analysis determined that it was methamphetamine hydrochloride with a 95.9% average purity. The residence located at 5839 Southgood Street, Houston, TX, is approximately 888 feet to the Center of Kelso Elementary School, 540 feet to the southeast corner of the real property on which Kelso Elementary School sits, and 765 feet to the southwest corner of the real property on which Kelso Elementary School sits. There is a school playground located near the southwest corner of the schools real property.

On October 6, 2014, in a recorded conversation between CI #1 and Jorge ROJO-Villa, CI #1 told Jorge ROJO-Villa that he/she would stop by the following day around 5pm and to be ready. Jorge ROJO-Villa told CI #1 that he will be ready and to just call him. CI #1 asked Jorge ROJO-Villa what the price was that he gave him/her and Jorge ROJO-Villa responded that it would be seven. Based on your Affiant's training and experience, Jorge ROJO-Villa referred to price of $7,000 for approximately one pound of crystal methamphetamine. CI #1 also asked Jorge ROJO-Villa about the price of the "guerita," a Spanish code word meaning "white girl," which based on your Affiant's training and experience, is code for cocaine. Jorge ROJO-Villa responded that it would be 29.5. And based on your Affiant's training and experience, Jorge ROJO-Villa gave a price of $29,500 for one kilogram of cocaine.

On October 7, 2014, a buy/walk operation was conducted using CI #1 and resulted in the seizure of approximately 1.34 kilograms of crystal methamphetamine. In the time leading up to the deal between CI #1 and Jorge ROJO-Villa, there were three (3) recorded conversations between Jorge ROJO-Villa and CI #1. In the first of those recorded conversations, CI #1 confirmed with Jorge ROJO-Villa that they are meeting at the same place as before. According to CI #1, he/she was referring to the residence located at 5839 Southgood Street, Houston, TX, where they have conducted prior narcotics transactions. During that first recorded conversation, CI #1 also confirmed the price for the pre-negotiated quantity, and asked fourteen. Based on your Affiant's training and experience, CI #1 was referring to $14,000 for the pre-arranged quantity of 1 kilogram of crystal methamphetamine. In the second record conversation, Jorge ROJO-Villa told CI #1 that he would be there in about eight minutes. According to CI #1, Jorge ROJO-Villa was referring to the residence located at 5839 Southgood Street, Houston, TX. And during the third recorded conversation, Jorge ROJO-Villa told CI #1 that he would be there in about two minutes and CI #1 stated that he/she was outside. Once Jorge ROJO-Villa arrived, CI #1 went inside with him and they were greeted by Maria VILLA. Casual conversation between the three ensued about narcotics. During the conversation,

CI #1, Jorge ROJO-Villa and Maria VILLA discussed potential marijuana, ecstasy, cocaine deals, prices, and splitting profits if CI #1 works with them. After more narcotics-based conversation, Jorge ROJO-Villa received a phone call and received information that the delivery of the narcotics was going to be delayed. After the phone call, Jorge ROJO-Villa told Maria VILLA to call her supplier while he simultaneously attempted to call her supplier. Jorge ROJO-Villa stated that his call went straight to voicemail. Maria VILLA was able to contact the supplier and spoke in code to an unknown person. Maria VILLA could be heard on the body wire recorder that CI #1 was wearing. Maria VILLA said to "Send one worker. My sink is broken. I need you to send one really quick, but he has to be a real hard worker because I don't want any tragedies. Yes, the ones that you have." A short time later, a white Chrysler 300, bearing Texas license plate DMP5486, arrived at 5839 Southgood Street, Houston, TX. On the audio recorded from the body wire CI #1 was wearing, a female child could be heard answering a knock on the door and saying, "It's ▬▬▬." A Hispanic male was seen on the recording from the body camera CI #1 was wearing. On that recording, ▬▬▬ ▬▬▬ greeted CI #1 while holding the shoe box that he (▬▬▬) arrived with, that contained the crystal methamphetamine. CI #1 then went outside to the his/her vehicle to retrieve the money and then went back inside. CI #1 went back in to where Jorge ROJO-Villa and ▬▬▬ were and handed over the money. CI #1 then took the shoe box that contained a small plastic container which held the crystal methamphetamine. Jorge ROJO-Villa then called out to Maria VILLA to help CI #1. Maria VILLA then retrieved a large ziplock bag and helped CI #1 transfer the crystal methamphetamine from the small, plastic container into the ziplock bag. A short time later CI #1 departed the residence and drove directly to a pre-arranged meeting location. HSI special agents then seized the shoebox that contained the ziplock bag that held the crystal methamphetamine. CI #1 identified a photo of Jorge ROJO-Villa from a photo lineup as the individual from who CI #1 purchased the crystal methamphetamine. CI #1 identified a photo of ▬▬▬ as the individual who delivered the crystal methamphetamine. The crystal methamphetamine was taken to the U.S. Customs and Border Protection lab for testing and approximately 1005 grams (net weight) was received. Additionally, the shoebox was also taken to the U.S. Customs and Border Protection lab for finger print analysis; however, there were no usable finger prints that matched ▬▬▬, Jorge ROJO-Villa or any other unknown individual. A sample was taken from the 1005 grams that was submitted and lab analysis determined that it was methamphetamine hydrochloride with a 99.8% average purity. The residence located at 5839 Southgood Street, Houston, TX, is approximately 888 feet to the Center of Kelso Elementary School, 540 feet to the southeast corner of the real property on which Kelso Elementary School sits, and 765 feet to the southwest corner of the real property on which Kelso Elementary School sits. There is a school playground located near the southwest corner of the schools real property.

On April 16, 2015, HPD seized approximately 510 grams of cocaine, subsequent to a traffic stop. Prior to the traffic stop, Juan CANTARERO contacted a documented HSI CI (CI #2) and asked about purchasing ½ kilogram of cocaine. CI #2 told CANTARERO to come to his/her residence after 6pm. At approximately 6:50pm a black Chevrolet Silverado arrived at the residence of CI #2. HPD surveillance observed CANTARERO

4

(driver) and two Hispanic male passengers (later identified as ▉▉▉▉ and ▉▉▉▉) exit the vehicle and enter the residence. At approximately 6:55pm CANTARERO, ▉▉▉, ▉▉▉ and CI #2 were observed leaving the residence and getting into CANTARERO's vehicle (CANTARERO driver's seat, CI #2 front passenger, ▉▉▉ and ▉▉▉ rear passengers.) At approximately 7:03pm, they arrived at 5839 Southgood Street, Houston, TX. CANTARERO and CI #2 exit the vehicle and approach the residence at approximately 7:04pm. At approximately 7:18pm, while CI #2 and CANTARERO were inside the residence, ▉▉▉ exits the vehicle and stands near the vehicle. At approximately 7:24pm CI #2 and CANTARERO exit the residence and return to the vehicle and along with ▉▉▉, all return to the seats that they arrived in. Upon exiting the residence at 5839 Southgood Street, Houston, TX, CANTARERO was seen on the video recording carrying what appears to be a white bag. At approximately 7:45pm, the vehicle arrived back at the residence of CI #2 and all four occupants were observed exiting the vehicle and entering the residence. ▉▉▉ was observed carrying the white plastic bag from the vehicle into the residence. At approximately 8:06pm, CANTARERO, ▉▉▉, and ▉▉▉ were observed exiting the residence and returning to the vehicle. Upon exiting the residence of CI #2, ▉▉▉ was observed carrying a white plastic bag. CANTARERO sat in the driver's seat, ▉▉▉ in the front passenger's seat, and ▉▉▉ in the rear passenger's seat. After the vehicle departed, HPD Officer Mario Valles spoke to CI #2, who reported they had purchased the cocaine from Maria VILLA and that the cocaine was in a white, plastic bag. Surveillance units followed the black Chevrolet Silverado that CANTARERO was driving and initiated a traffic stop at approximately 8:25pm for failure to signal. Consent to search the vehicle was given by CANTARERO upon request. A white, plastic bag that contained a white, powdery substance that field tested positive for cocaine was discovered under the rear seat. HPD subsequently seized approximately 510 grams of cocaine. CANTARERO, ▉▉▉ and ▉▉▉ were handcuffed and placed in the backs of patrol cars. HPD officers decided to move the scene of the traffic stop due to heavy rain. The new scene was located under an overpass of I-10. Upon completing the investigation, HPD officers released CANTARERO, ▉▉▉ and ▉▉▉. However, upon removing ▉▉▉ from the patrol car, HPD Officer Bobby Bradly discovered a small sock that contained a clear plastic bag on the floor board. The clear plastic bag contained several pieces of a rock-like substance that field tested positive for cocaine. At this point, HPD seized approximately 1.4 grams of crack cocaine.

On August 11, 2015, CI #2 received a phone call from Maria VILLA who asked CI #2 to come outside because they were there. When CI #2 went outside, Andreina ROJO (driver) and Maria VILLA (passenger) were in a Silver Toyota Tundra. CI #2 asked why they had come over and Maria VILLA told CI #2 they had come over to bring "this" while handing CI #2 a small baggy containing a white powdery substance. CI #2 said that he/she did not need any of this (cocaine) right now and Maria VILLA said that it was ok to take a few days to sell it and then pay her (Maria VILLA). CI #2 then asked how much did she (Maria VILLA) want for it (the cocaine), and Maria VILLA answered $900. CI #2 then took the cocaine from Maria VILLA and told them that he/she (CI #2) would call Maria VILLA once he/she had sold it (the cocaine). They said their goodbyes and CI #2 went back inside. CI #2 then called HPD Officer Mario Valles and reported

5

this. HPD Officers Valles and Bobby Bradley went to the residence of CI #2. The white powdery substance field tested positive for cocaine and HPD seized approximately 29 grams of cocaine.

On August 13, 2015, HSI special agents and HPD officers met with CI #2, who was instructed to go to the residence located at 5839 Southgood Street, Houston, TX, where it was suspected that Maria VILLA was located. CI #2 was given $900 to take to Maria VILLA to pay for the cocaine that Maria VILLA and Andreina ROJO had delivered two days prior. CI #2 then went to the aforementioned address and paid Maria VILLA the $900. CI #2 reported that upon arrival at the residence, a minor son of Ines ROJO answered the door and let CI #2 inside. CI #2 had a brief social conversation with Maria VILLA and paid her. CI #2 also reported that ▓▓▓▓▓▓▓ was asleep on the couch.

On November 18, 2015, surveillance observed several individuals outside the residence at 5839 Southgood Street, Houston, TX, and multiple vehicles arriving and then leaving after a short period of time. HPD officers met with CI #2 who was given $125 and instructed to go to the aforementioned residence and purchase a quantity of cocaine. HPD officers then followed CI #2, who drove directly to residence located at 5839 Southgood Street, Houston, TX. HPD officers observed CI #2 arrive and enter the residence. After a short period of time, CI #2 was observed exiting the residence and returning to the same vehicle. CI #2 then drove directly to a predetermined location and met with HPD Officer Mario Valles. HPD Officer Valles then took custody of and seized a small, clear plastic bag from CI #2 and field tested the white, powdery substance that it contained. The substance field tested positive for cocaine. HPD Officer Valles debriefed CI #2, who reported that upon arrival at the residence he/she was greeted by several individuals known to CI #2. CI #2 stated that Ines ROJO, ▓▓▓▓▓▓▓ Jorge ROJO-Villa, Pedro ROJO and two unknown Hispanic males were there, inside the residence. CI #2 was approached by Pedro ROJO who sold CI #2 a quantity of cocaine for $125. After the transaction was completed, CI #2 was approached by ▓▓▓▓▓▓▓ who told CI #2 the he had some "hydro" for sale, referring to hydroponic marijuana.

Based upon the above, I submit there is probable cause to believe that Jorge ROJO-Villa, ▓▓▓▓▓▓▓ Maria VILLA, Pedro ROJO, ▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓, Juan CANTARERO, ▓▓▓▓▓▓▓, and ▓▓▓▓▓▓▓ have knowingly and intentionally manufactured, distributed, or dispensed, or possessed with intent to manufacture, distribute, or dispense, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers; and the conspiracy to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21 USC § 841(a)(1); § 841(b)(1)(A); and § 846.

6

_____
Michael Campise, Special Agent
Homeland Security Investigations

Sworn and subscribed to before me this ___19th___ day of February, 2016, and I find probable cause.

_____
John R. Froeschner
United States Magistrate Judge